[S. F. No. 600. In Bank.—September 3, 1896.]

THE PEOPLE ex rel. JOHN C. LYNCH, Petitioners, v. JAMES H. BUDD, Governor of the State of California, Respondent.

Constitutional Law—Vacancy in Office of Lieutenant-governor—Appointment by Governor—Election—Mandamus.—If the office of lieutenant-governor becomes vacant during the term of four years for which he was elected, the governor may fill the vacancy by appointment, for the full remainder of the unexpired term, and cannot be compelled by writ of mandate to call an election for lieutenant-governor to fill the vacancy at the next ensuing general election, occurring before the expiration of the term.

Id.—Construction of Section 8, Article V—"Next Election by the People."—The words "next election by the people," in section 8 of article V of the constitution do not mean the next general election, or the next election held by the people, but mean that the appointee should hold until some one has been regularly elected to fill that office, in the manner provided by law, and as applied to the lieutenant-governor it means the next gubernatorial election.

Application to the Supreme Court for writ of mandate to the governor of the state.

The facts are stated in the opinion of the court.

*Denson & De Haven*, for Petitioner.

*W. W. Foote*, and *Garret W. McEnerney*, for Respondent.

Temple, J.—This is an application for a writ of mandate to compel the governor to include in his proclama-

tion for the coming election a call to fill the office of
lieutenant-governor for the unexpired term of Spencer
G. Millard, deceased. Respondent has filled the vacancy
caused by the death of the lieutenant-governor by the
appointment of William T. Jeter, who has duly qualified.

In this case both parties concede—as indeed the ex-
igencies of each require him to do—that the vacancy
caused by the death of Millard was one which the gov-
ernor had the power to fill. If there can be question of
the power of the governor in this respect, therefore, we
have not considered it. And no question has been
made, nor have we considered, whether a mandate will
issue to compel the chief executive to perform an act
which, if it be his duty to perform, is enjoined upon
him by the constitution as the executive, nor whether
he can be compelled to perform any public duty at the
instance of one who has no vested right to have it per-
formed nor any interest special to himself, or other than
that which every citizen has in its performance; or,
rather, we have not considered whether to issue the
mandate asked for would trench upon the province of
the executive.

The constitution provides (Const., sec. 3, art. IV) that
members of the assembly shall be elected in 1880, and
biennially thereafter. Section 2, article V, provides
that the governor shall be elected " at the time and
places of voting for members of assembly, and shall
hold his office for four years from and after the first day
of January subsequent to his election." Section 15,
article V, is as follows:

"A lieutenant-governor shall be elected at the same
time and places, and in the same manner, as the gov-
ernor; and his term of office and his qualifications of
eligibility shall also be the same. He shall be president
of the senate, but shall have only a casting vote therein.
If, during a vacancy of the office of governor, the lieu-
tenant-governor shall be impeached, displaced, resign,
die, or become incapable of performing the duties of his
office, or be absent from the state, the president *pro*

*tempore* of the senate shall act as governor until the vacancy be filled or the disability shall cease. The lieutenant-governor shall be disqualified from holding any other office, except as specially provided in this constitution, during the term for which he shall have been elected."

And in the following section it is provided that in case of the death, resignation, impeachment, absence from the state, or inability to act of the governor, "the powers and duties of his office shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease."

It will be seen that in case of a vacancy in the office of governor the vacancy is not to be filled, but the powers and duties devolve upon the lieutenant-governor, who does not cease to be lieutenant-governor. Under such circumstances, it would hardly be contended that, when the powers and duties of the governor devolve upon the lieutenant-governor, the latter thereby becomes governor and can appoint a lieutenant-governor. Nor do I think it could be contended that when the president *pro tempore* of the senate acts as governor he could appoint a person to fill the vacancy in the office of lieutenant-governor. If he could he would then appoint himself out of office, and it would be his duty to do so.

But it is conceded by the parties that upon the death of the lieutenant-governor, the governor may fill the vacancy by appointment. This is unmistakably within the language of section 8, article V, which reads as follows:

" When any office shall from any cause become vacant, and no mode is provided by the constitution and law for filling such vacancy, the governor shall have the power to fill such vacancy by granting a commission, which shall expire at the end of the next legislature, or at the next election by the people."

An office has become vacant, and there is no other mode provided by the constitution or laws to fill it. "The next election by the people" does not mean the

next general election, or the next election held by the people, but it must mean that the appointee shall hold until someone has been elected to fill that office.

But there is nothing in this provision which indicates when this election shall be held, but only that until someone has been elected to fill the vacancy the appointee shall hold. This section does not direct that such election shall be at the next general election. It provides simply for filling vacancies by appointment, and that such appointees shall hold until the office is filled in the manner provided by law, but does not itself provide for such election, or direct when it shall be.

If, however, the phrase "the next election by the people," is equivalent to the phrase "the next election," and we assume that it was intended thereby to indicate the election at which such vacancy would be filled, we would feel compelled to hold that the next election is that which the constitution has provided for filling that particular office, that is, the next gubernatorial election.

Many authorities may be cited in support of this proposition. In *Matthews* v. *Shawnee Co.*, 34 Kan. 606, the governor appointed a judge to fill a vacancy. The constitution provided for an appointment to fill the vacancy until the next regular election. Upon a contest the supreme court said: "The words 'regular election' do not necessarily mean general election, or township election, or any state, county, city, or district election. They simply mean the regular election prescribed by law for the election of the particular officer to be elected."

*State* v. *Philips*, 30 Fla. 579, involved a municipal office. The court said: "When it is declared that the city council shall fill vacancies until the next regular election, it means until the next regular election provided by the charter for electing the officer whose term has become vacant."

To the same effect are *State* v. *Gardner*, 3 S. Dak. 553; *State* v. *Haydon*, 1 Nev. 75; *People* v. *Wilson*, 72 N. C.

155; *State* v. *Cobb,* 2 Kan. 32; *People* v. *Mathewson,* 47 Cal. 442.

The effect of these decisions is that the term "next election" means the next election for a lieutenant-governor, and that the language used in section 8 cannot be understood as itself directing that at the next succeeding general election the vacancy shall be filled. Is an election at that time authorized by any law?

The constitution contains no provision for holding an election for filling this vacancy, and is silent as to whether the appointee shall hold for the residue of the term. And this is more noticeable because, as to some other officers, there are explicit directions upon the subject. In regard to justices of this court, and judges of the superior court, it is expressly provided that, in case of a vacancy, the appointee shall hold until the election and qualification of a successor. "Which election shall take place at the next general election." (Const., art. VI, secs. 3, 5.) In regard to railroad commissioners, the provision is that the appointee shall hold office for the residue of the unexpired term. The constitution is equally silent in regard to filling vacancies in other executive offices. A similar state of things existed under the constitution of 1849, and the legislature passed a law for filling such vacancies. ("An act concerning offices," April 28, 1851, Stats. 1851, p. 415.) This act did not provide for the election of a lieutenant-governor. Like the governor, he was required in case of resignation to resign to the legislature if that body was in session, if not in session to the secretary of state. Such is also the requirement of the present code. (Pol. Code, sec. 995.) Like the old statute, the present code contains no provision in regard to an election to fill a vacancy in the office of lieutenant-governor. As to other state officers, the provision is that they shall hold for the balance of the unexpired term.

There has never been in the laws a provision for an election to fill a vacancy occasioned by the death or

resignation of a lieutenant-governor. Perhaps it was not supposed that such vacancy would ever be filled even by appointment. At all events, there is no law, either constitutional or statutory, for such an election.

In such case there can be no election. (*People* v. *Weller*, 11 Cal. 49; 70 Am. Dec. 754; *People* v. *Mathewson, supra; Kenfield* v. *Irwin*, 52 Cal. 164.)

In *State* v. *Haydon, supra*, it was said: " We think no court or judge has gone so far as to hold that the people might hold an election, or vote for any particular officer, at a general election, unless some special provision was made for electing such officer for the particular term for which he is seeking to be elected, either in the constitution or some statutory enactment." This was also said in *People* v. *Mathewson, supra*. The efficacy of an election depends upon the law in pursuance of which it is held, and the fact that an office is elective does not of itself, without some law authorizing and regulating the election, render valid any attempted election.

The writ is therefore denied.

McFARLAND, J., VAN FLEET, J., HARRISON, J., BEATTY, C. J. and HENSHAW, J. concurred.

GAROUTTE, J., concurring.—I concur in the judgment. The constitution provides that the powers and duties of the office of governor, in case of vacancy, shall devolve upon the lieutenant-governor for the residue of the term, or until the disability shall cease. The constitution further provides that, in case of a vacancy in both the office of governor and lieutenant-governor, the president *pro tempore* of the senate shall act as governor until the vacancy be filled. The constitution does not provide that the president *pro tempore* of the senate shall perform the duties of the office of lieutenant-governor in case a vacancy exists in that office. And this omission to so provide is, to my mind, an unintentional lapse on the part of the framers of the constitution. Such appears to be plain, when we consider that there is an ex-

press provision of that instrument casting upon the president *pro tempore* of the senate authority to perform the duties of the office of governor if there be no lieutenant-governor, taken in connection with the many other provisions of that instrument which all point to that conclusion. But no authority is found in the constitution vesting the president *pro tempore* of the senate with the duties of the lieutenant-governor when a vacancy occurs in that office, and hence any such question is foreclosed.

The foregoing conditions being present, a vacancy occurred in the office of lieutenant-governor upon the death of the incumbent, and the governor had the power to fill such vacancy by virtue of section 8, article V, of the constitution. That section reads as follows: "When any office shall from any cause become vacant, and no mode is provided by the constitution and law for filling such vacancy, the governor shall have the power to fill such vacancy by granting a commission, which shall expire at the end of the next legislature or at the next election by the people." It follows that the result of this litigation in part rests upon the true construction of the words "the next election by the people." It is conceded by the present incumbent of the office, that the next election by the people since his appointment will be the coming presidential election to be held in November, but he claims the words should be construed to mean "the next election by the people at which a lieutenant-governor is regularly to be elected." If the framers of an instrument of the dignity and importance of a state constitution had intended such to be the law, it was easy for them to have said so, and they should have so declared in terms. And, in the absence of a declaration of that kind, I do not consider myself authorized to so interpret a phrase of that instrument, certainly not unless the intent of its authors to that effect is plainly apparent; and we look in vain for such intent. Upon a question of statutory construction it was said in *Blythe* v. *Ayres*, 96 Cal. 582: "We are not here to con-

struct a statute, but to construe a statute. We can
neither interpolate nor eliminate, and we are bound to
assume that the legislature enacted the law as it now
stands with a due comprehension of the meaning of
words, and of the rules of statutory construction, and
that they incorporated into the act all that was intended,
and that they intended that effect should be given to all
that was found therein." And that principle of con-
struction applies with full force here. If any layman of
ordinary intelligence, be he merchant, doctor, or me-
chanic, should have the question submitted to him as to
the proper signification of the words here under consid-
eration, to wit, the officer's commission shall expire "at
the next election by the people," he would say without
hesitation that the commission expired at the next gen-
eral election. Such is the fair and legitimate construc-
tion of the language. There are some decisions of
courts of other states which, in a measure, look in an op-
posite direction from the views here expressed. But
these decisions are largely based upon provisions of law
not identical with the one here involved. Many of
those provisions use the term "regular election"; and,
in such cases, stress by the court is laid upon the word
"regular" as a most material element in arriving at the
true construction of the language.

Notwithstanding the foregoing construction of the
constitutional provision is favorable to the petitioner,
still the relief he asks must be denied. For, though the
appointee's commission expire at "the next election by
the people," still, in the absence of some law authorizing
the election of a lieutenant-governor at that time, no
election can be held, and I find no such law. A pro-
vision of constitution or statute declaring a certain day
upon which the commission of an officer shall expire, is
in no sense a provision that an election shall be held
upon that day to fill the office. Under these conditions
the present appointee of the governor will hold until his
successor is elected and qualified, regardless of the day

upon which his commission may expire; and his successor can only be elected at a time fixed by law, which time will be at the regular state election in the year 1898.